IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

\* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| JOHN M. MILLER, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 2:05-CV-0190BSJ |
| vs. | ) | |
| | ) | |
| JACK ROBERTSON, an individual; | ) | **MEMORANDUM OPINION** |
| SYSTEMS & SERVICES | ) | **& ORDER** |
| TECHNOLOGIES, INC., a Delaware | ) | **(Fed. R. Civ. P. 12(b)(2))** |
| corporation; WELLS FARGO | ) | |
| SERVICING SOLUTIONS, LLC, a | ) | |
| Florida limited liability company; | ) | |
| EXPERIAN INFORMATION | ) | |
| SOLUTIONS, INC., a Delaware | ) | |
| corporation; TRANS UNION | ) | |
| CORPORATION, a Delaware | ) | |
| corporation; and EQUIFAX, INC., a | ) | |
| Georgia corporation, | ) | |
| | ) | |
| Defendants. | ) | |

```
FILED
CLERK, U.S. DISTRICT COURT
January 29, 2008 (12:09pm)
DISTRICT OF UTAH
```

\* \* \* \* \* \* \* \* \*

The plaintiff, John M. Miller, filed the instant action against the defendants under various

sections of title 18 of the United States Code,[1] augmented by a subsequent amendment adding

claims under provisions of the Fair Debt Collection Practices Act, 15 U.S.C.A. §§ 1692-1692*o*

(1998), the Fair Credit Reporting Act, 15 U.S.C.A. §§ 1681-1681*x* (1998), and the criminal

liability provision of the Truth in Lending Act, 15 U.S.C.A. § 1611 (1998).  (*See* Amended

Complaint, filed July 12, 2006 (dkt. no. 26/30).)  Most of the defendants subsequently filed

answers to the Amended Complaint; defendant Jack Robertson filed both an Answer to the

---

[1]*See* 18 U.S.C.A. § 1028 (2000) (fraud relating to identification documents); 18 U.S.C.A.
§ 1029 (2000) (access device fraud); 18 U.S.C.A. § 1341 (2000) (mail fraud); and 18 U.S.C.A.
§ 1344 (2000) (bank fraud).

Amended Complaint and a Cross-Claim against three defendants.  On October 30, 2006,

defendant Systems and Services Technologies, Inc. ("S&ST") filed a Motion to Dismiss for Lack

of Personal Jurisdiction (dkt. no. 34), seeking dismissal of the Amended Complaint as against

S&ST, and on December 8, 2006, a Motion to Dismiss Jack Robertson's Cross Claim for Lack of

Personal Jurisdiction (dkt. no. 47).  The court heard both motions on December 11, 2006 and

took the matter under advisement. (*See* Minute Entry, dated December 11, 2006 (dkt. no. 51).)[2]

Having reviewed the memoranda and affidavits submitted by the parties and having heard

and considered the arguments of counsel, this court now rules that it has specific personal

jurisdiction over S&ST for the purposes of litigating Miller's claims against S&ST, and that it

has ancillary jurisdiction over Robertson's cross-claim against S&ST.  Consequently, both

motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) will be denied.

### S&ST's Motion to Dismiss the Amended Complaint

Plaintiff Miller bears the burden of proving that this court's exercise of jurisdiction over

S&ST is proper, though he need do so only by a preponderance of the evidence.  *See Karnes v.*

*Boeing Co.*, 335 F.3d 1189, 1194 (10th Cir. 2003); *Soma Med. Int'l v. Standard Chartered Bank*,

196 F.3d 1292, 1295 (10th Cir. 1999) (discussing this court's personal jurisdiction over

non-resident defendants); *Behagen v. Amateur Basketball Ass'n of the United States*, 744 F.2d

---

[2]In the interim, defendant Wells Fargo Servicing Solutions, LLC, filed a motion for summary judgment (dkt. no. 70), which was heard on December 10, 2007, granted in part (dismissing plaintiff's claim under 15 U.S.C.A. § 1611) and denied in part.  (*See* Order, filed January 2, 2008 (dkt. no. 91).)

Plaintiff's counsel sought leave to file a Second Amended Complaint, a  request which was heard on December 10, 2007, and also taken under advisement, affording the plaintiff ten additional days to decide whether he wished to pursue the proposed amendment.  (*See* Motion for Leave to File Amended Complaint, filed November 5, 2007 (dkt. no. 76); Minute Entry, dated December 10, 2007 (dkt. no. 92); Order, filed January 2, 2008 (dkt. no. 91).)

On December 19, 2007, Plaintiff's counsel filed a written notice withdrawing the proposed Second Amended Complaint (dkt. no. 90), thus mooting plaintiff's motion to amend.  The existing Amended Complaint (dkt. no. 26/30) remains the operative pleading in this case.

731, 733 (10th Cir. 1984), *cert. denied*, 471 U.S. 1010 (1985) ( "The plaintiff bears the burden of

establishing personal jurisdiction over the defendant.").  As is the case here, "when a motion to

dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials,

the plaintiff need only make a prima facie showing," *Behagen*, 744 F.2d at 733, and "[w]e

resolve all factual disputes in favor of the plaintiff . . . ." *Far West Capital, Inc. v. Towne*, 46

F.3d 1071, 1075 (10th Cir. 1995); *see Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d

453, 456 (10th Cir. 1996).[3]

**S&ST's Minimum Contacts with the Forum State**

As the court of appeals explains:

> "The Due Process Clause protects an individual's liberty interest in not being
> subject to the binding judgments of a forum with which he has established no
> meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471
> U.S. 462, 471-72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quotations omitted).
> Thus, a "court may exercise personal jurisdiction over a nonresident defendant
> only so long as there exist minimum contacts between the defendant and the
> forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291,
> 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (quotations omitted). "The minimum
> contacts necessary for specific personal jurisdiction are established if the
> defendant has purposefully directed his activities at residents of the forum and the
> litigation results from alleged injuries that arise out of or relate to those activities."
> *Soma Med. Int'l*, 196 F.3d at 1298 (quotations omitted).

*Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005).

Thus, the analysis of whether this court's exercise of personal jurisdiction over S&ST

---

[3]      The plaintiff may make this prima facie showing by demonstrating, via affidavit or
other written materials, facts that if true would support jurisdiction over the
defendant.  In order to defeat a plaintiff's prima facie showing of jurisdiction, a
defendant must present a compelling case demonstrating "that the presence of some
other considerations would render jurisdiction unreasonable."  *Burger King*, 471
U.S. at 477, 105 S.Ct. 2174; . . .

*OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (citation omitted).

comports with the Due Process Clause involves a two-step inquiry.  *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004), *cert. denied*, 544 U.S. 974 (2005).

> First we consider whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."  *World-Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. 559, 62 L.Ed.2d 490. Second, "if the defendant's actions create sufficient minimum contacts, we must then consider whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice."  *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quotations omitted).

*Pro Axess, Inc.*, 428 F.3d at 1276-77.  Thus, in determining whether a particular exercise of personal jurisdiction is consistent with Due Process, the court's inquiry must focus on the relationships between the defendant, the forum, and the litigation.  *See Calder v. Jones*, 465 U.S. 783, 788 (1984).  The "minimum contacts" inquiry focuses on the factual connections between a nonresident defendant and the forum State, such as business activities or other conduct purposefully directed at the forum.  The "fair play and substantial justice" inquiry requires a determination of whether a district court's exercise of personal jurisdiction over a defendant having minimum contacts with the forum is "reasonable" in light of the circumstances surrounding the case.  *See Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 109 (1987).  "Ultimately, the minimum contacts test is about fairness; when is it unfair to hale an out-of-state defendant to another state?  No bright-line test for this can ever be created. . . . Fairness is inherently contextual and fact-specific."  Erwin Chemerinsky, *Assessing Minimum Contacts: A Reply to Professors Cameron and Johnson*, 28 U.C. Davis L. Rev. 863, 866, 867 (1995).

"The 'minimum contacts' test may be met in either of two ways.  First, if a defendant has

'continuous and systematic general business contacts' with the forum state, it may be subjected

to the general jurisdiction of the forum state's courts." *Melea, Ltd. v. Jawer SA*, ___ F.3d___,

2007 WL 4510263, *4 (10th Cir. December 22007) (citing *Helicopteros Nacionales de Colombia*

*v. Hall*, 466 U.S. 408, 414-16 (1984)); *accord Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226,

1233 (10th Cir. 2006).  "Second, even in the absence of 'continuous and systematic' contacts, a

state's courts may exercise specific jurisdiction over a defendant that 'purposefully directed' its

activities at the state's residents, if the cause of action arises out of those activities." *Id.* (citing

*Burger King*, 471 U.S. at 472-73); *see also Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ( "[I]t

is essential in each case that there be some act by which the defendant purposefully avails itself

of the privilege of conducting activities within the forum State.").

### General *In Personam* Jurisdiction over S&ST

In this case, Miller argues that this court has *general* personal jurisdiction over S&ST for

purposes of this lawsuit.  Yet "[b]ecause general jurisdiction is not related to the events giving

rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to

demonstrate the defendant's 'continuous and systematic general business contacts'" with the

forum state.  *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir.

1996) (quoting *Helicopteros*, 466 U.S. at 416); *see OMI Holdings, Inc. v. Royal Ins. Co. of*

*Canada*, 149 F.3d 1086, 1090-91 (10th Cir. 1998).[4]

Concerning S&ST's "continuous and systematic" contacts, Miller asserts that

[d]efendant SST has registered with the State of Utah to conduct business within

---

[4]As Professor Chemerinsky explains, "there can never be a formula or a clear rule for what degree of involvement in a state is enough to justify a conclusion of systematic and continuous contacts."  Chemerinsky, *supra*, at 867.

> the State of Utah and has contracted with C.T. Corporation to act as its designated
> agent for service of process within the State of Utah, and by so doing has
> consented to the jurisdiction of the state of Utah. . . . SST's own website states
> that it "services receivables in all 50 states."  Defendant SST meets the criteria for
> continuous and systematic business contacts within the forum jurisdiction through
> its servicing of receivable accounts within the State of Utah, and by maintaining ,
> in good standing, its business affiliation within the State of Utah. . . .

(Response to Motion to Dismiss for Lack of Jurisdiction, filed November 13, 2006 (dkt. no. 40),

at 4.)  S&ST concedes that it "remotely services some receivable accounts where the account

holder resides in Utah," but denies that it has "continuous and systematic" business contacts with

the State of Utah.  (Reply Memorandum in Support of Motion to Dismiss for Lack of Personal

Jurisdiction, filed November 20, 2006 (dkt. no. 44), at 7.)   S&ST avers that it has no offices or

employees located in the State of Utah, and does not advertise its services in Utah, apart from the

nationwide accessibility of its online Web site.  (*Id.* at 8.)

The presence in the forum of a corporation's registered agent by itself does not

automatically confer general personal jurisdiction.  *See Perkins v. Benguet Consolidated Mining

Co.*, 342 U.S. 437, 444-48 (1952) ("The corporate activities of a foreign corporation which,

under state statute, make it necessary for it to secure a license and to designate a statutory agent

upon whom process may be served provide a helpful but not a conclusive test.").   Only after a

thorough minimum contacts and fairness analysis can a court be deemed to have jurisdiction.

*Perkins*, 342 U.S. at 445-449 (minimum contacts shown where corporation's president

maintained an office and bank accounts and conducted corporate business in the forum State).

In  *Ratliff v. Cooper Laboratories, Inc.*, 444 F.2d 745 (4th Cir.), *cert. denied*, 404 U.S.

948 (1971), the Fourth Circuit observed that

> the application to do business and the appointment of an agent for service to fulfill

> a state law requirement is of no special weight in the present context.  Applying
> for the privilege of doing business is one thing, but the actual exercise of that
> privilege is quite another. See *International Shoe Co. v. Washington*, *supra*, 326
> U.S. at 319, 66 S.Ct. 154. The principles of due process require a firmer
> foundation than mere compliance with state domestication statutes.

*Id.* at 748.  In *Ratliff*, the nonresident defendants, who had not only qualified to do business and appointed an agent for service of process, but maintained five salesmen in the forum, were found to not have sufficient contacts because the plaintiff's cause of action arose outside the forum and were not connected to the defendants' activities within the forum: "When, however, defendant's only activities consist of advertising and employing salesmen to solicit orders, we think that fairness will not permit a state to assume jurisdiction."  *Id.*  The forum State was not "a community into whose business life the defendant had significantly entered as determined by the quality, substantiality, continuity, and systematic nature of its activities."  *Id.*

Similarly, in *Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179 (5th Cir. 1992), the Fifth Circuit concluded that the nonresident defendant's act of registering an agent was not sufficient to create a "general business presence" sufficient to justify the exercise of general personal jurisdiction in the forum State.  While "being qualified to do business, may on its face appear to be significant," the court explained, "it 'is of no special weight' in evaluating general personal jurisdiction." *Id.* at 181 (citing *Ratliff*, 444 F.2d at 748).  "Plaintiffs cite no case and this Court has found none that supports the proposition that the appointment of an agent for process and the registration to do business within the state, without more, suffices to satisfy the criteria for the exercise of general jurisdiction."  *Id.* at 182.

In contrast, the Eighth Circuit found that a nonresident manufacturer had the requisite minimum contacts with Arkansas, where it did significantly more than appoint a registered agent:

the fact remains that Sherwin Williams conducts continuous business in Arkansas; it employs workers, owns and leases property, and has designated an agent for service of process in the state.  Sherwin Williams "purposefully avail[ed] itself of the privilege of conducting activities within the forum state," *Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. 1228, and its contacts were not "random, fortuitous, or attenuated." *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174 (internal quotations omitted).  Giving due weight to the nature, quality, and quantity of its connections, we find that Sherwin Williams could "reasonably anticipate being haled into court" in Arkansas. *World-Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. 559.

*Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1075 (8th Cir. 2004); *see LSI Industries, Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369 (Fed. Cir. 2000) )("Based on [defendant's] millions of dollars of sales of lighting products in Ohio over the past several years and its broad distributorship network in Ohio, we find that [defendant] maintains 'continuous and systematic contacts with Ohio.'").

In *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163 (9th Cir.), *cert. denied*, 127 S. Ct. 723 (2006), the Ninth Circuit identified the presence of a registered agent in the state as one factor to consider when determining if personal jurisdiction exists over a non-resident defendant:

> In evaluating general jurisdiction, we have not developed a precise checklist or articulated a definitive litany of factors. We consider, among other factors, "whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there.". . .  It is the nature and extent of the contacts that determines whether they are "substantial" or "continuous and systematic." Longevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets are among the indicia of such a presence.

*Id.* at 1172 (citation omitted).  In *Tuazon*, the defendant "Reynolds has been licensed to do business in Washington for decades, maintains an office and a staff of permanent employees, advertises in purely local media, targets Washington consumers, and derives $145-240 million in

annual revenues from sales in Washington." *Id.* at 1170.

These cases instruct that qualifying to do business or appointing a registered agent are relevant factors to be considered in evaluating a nonresident defendant's contacts with the forum, but they are not decisive by themselves. Generally, registration, or lack of registration, of a particular business is often cited as one among a number of factors for determining whether "minimum contacts" exist. *See, e.g.*, *Hockerson-Halberstadt, Inc. v. Propet USA, Inc.*, 62 Fed. Appx. 322, 337 (Fed. Cir. 2003); *Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.*, 142 F.3d 1266, 1268 (Fed. Cir. 1998).

The court has previously enumerated a list of factors to be considered in determining whether a business has had "continuous and systematic" contacts sufficient to establish general personal jurisdiction, including whether a defendant is:

> (1) engaged in business in this state; (2) licensed to do business in this state; (3) owning, leasing, or controlling property or assets in this state; (4) maintaining employees, offices, agents, or bank accounts in this state; (5) shareholders [sic] reside in this state; (6) maintaining phone or fax listings within this state; (7) advertising or soliciting business in this state; (8) traveling to this state by way of salespersons; (9) paying taxes in this state; (10) visiting potential customers in this state; (11) recruiting employees in the state; and (12) generating a substantial percentage of its national sales through revenue generated from in-state customers.

*Bathcrest, Inc. v. Safeway Safety Step, Inc.*, 417 F. Supp. 2d 1236, 1240 (D. Utah 2006) (footnote omitted) (citing *Soma Medical Intern. v. Standard Chartered Bank*, 196 F.3d 1292, 1299 (10th Cir. 1999)).[5]

In this case, Miller asserts and S&ST concedes that it is qualified to do business in Utah

---

[5]A nonresident defendant's correspondence with someone within the forum is typically insufficient to establish the requisite "minimum contacts." *See Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir.1995) (citing *Cont'l Am. Corp. v. Camera Controls Corp.*, 692 F.2d 1309, 1314 (10th Cir. 1982)).

and may have some customers in Utah whose receivables are serviced by S&ST.  But Miller has proffered little else to show the requisite "continuous and systematic" contacts justifying the exercise of general personal jurisdiction over S&ST in this forum.  Miller points to S&ST's Web site, accessible online in Utah and elsewhere, but as alleged, the Web site appears to be a "passive Web site that does little more than make information available to those who are interested" and one in which S&ST "has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions."  *Zippo Mfg. Co.v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997).  Miller has not carried his burden of making a *prima facie* showing that the S&ST Web site is anything more than such a passive informational site. *Cf. PurCo Fleet Servs., Inc. v. Towers*, 38 F.Supp.2d 1320, 1324 (D. Utah 1999) (noting that "plaintiff has shown that [defendant] used its web site to solicit business from a Utah resident").

This court concludes that S&ST's limited contacts with the State of Utah do not suffice to establish general personal jurisdiction over S&ST in this District.  *See Harnischfeger Engineers, Inc. v. Uniflo Conveyor, Inc.*, 883 F. Supp. 608, 612 (D. Utah 1995).

## Specific *In Personam* Jurisdiction over S&ST

In determining whether S&ST has established sufficient minimum contacts with the Utah forum for purposes of specific personal jurisdiction, we examine whether the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  S&ST's contacts may prove sufficient if "the defendant purposefully directed its activities at residents of the forum, and . . . the plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial connection with the forum state." *OMI*, 149 F.3d at 1091 (quotations, citations, and emphasis

-10-

omitted).

The Tenth Circuit applies two criteria for determining specific jurisdiction in Utah: "In Utah, jurisdiction is appropriate only if plaintiff establishes that: (1) the defendant conducted certain enumerated activities in Utah, and (2) there is a nexus between plaintiff's claim and defendant's conduct." *Far West Capital*, 46 F.3d at 1074 (citing Utah Code Ann. § 78-27-24 (1998)).[6]

Miller appears to argue that S&ST has engaged in the following two activities enumerated in the Utah Long-Arm Statute: "(1) the transaction of any business within this state;" and "(3) the causing of injury within this state whether tortious or by breach of warranty; . . ." Utah Code Ann. § 78-27-24 (2002).[7]

The Federal Circuit has held that "even a single contact with a forum state may suffice for personal jurisdiction if it is directly and substantially related to the plaintiff's claim." *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed. Cir. 1998). But "'[r]andom,' 'fortuitous,' or 'attenuated' contacts do not count in the minimum contacts calculus. . . . Similarly, contacts resulting from the unilateral activity of others do not count." *Id.* Further, the *Red Wing* court stated that "doing business with a company that does business in [the forum state] is not the same as doing business in [that state]" and is insufficient to establish personal jurisdiction. In that case, the court found insufficient contacts to justify personal jurisdiction

---

[6]Utah's Long-Arm Statute defines the transaction of business broadly: "activities of a non-resident person, his agents, or representatives in this state which affect persons or businesses within the state of Utah." Utah Code Ann. § 78-27-23.

[7]The Utah Supreme Court has held that this statute was intended to be as broad as is constitutionally permissible, and that its reach is entitled to the widest possible construction. *See Synergetics v. Marathon Ranching Co.*, 701 P.2d 1106, 1110 (Utah 1985) (Utah long-arm jurisdiction "must be extended to the fullest extent allowed by due process of law").

over the defendant where the defendant only sent cease-and-desist letters into the forum state and

had licensees doing business in the forum state.

In this case, Miller asserts that S&ST

> has engaged in a continuous pattern of illegally disclosing the plaintiff's, and his
> deceased wife's, personal information, including social security numbers, address
> in the state of Utah, payment history, notation of late payments and threats that
> future late payments would be reported against their credit report, to third parties,
> including, but not limited to the defendant credit reporting agencies (Experian,
> Trans Union Corporation, and Equifax) and Jack Roberton.

(Response to Motion to Dismiss for Lack of Jurisdiction, filed November 13, 2006 (dkt. no. 40),

at 6.)

*Calder v. Jones*, 465 U.S. 783 (1984), held that it was proper for a court in California to

exercise jurisdiction over two Florida newspapermen in a libel action arising out of their

intentional conduct in Florida which was allegedly calculated to cause injuries to plaintiff in

California.  In *Far West Capital*, the Tenth Circuit examined *Calder* and its progeny and ruled

that the exercise of specific personal jurisdiction requires an examination by the court of tortious

contacts of the nonresident defendant with the forum State:

> the mere allegation that an out-of-state defendant has tortiously interfered with
> contractual rights or has committed other business torts that have allegedly injured
> a forum resident does not necessarily establish that the defendant possesses the
> constitutionally required minimum contacts.  Instead, in order to resolve the
> jurisdictional question, a court must undertake a particularized inquiry as to the
> extent to which the defendant has purposefully availed itself of the benefits of the
> forum's laws.

46 F.3d at 1079-80.

Here, a nonresident defendant's alleged communication of personal financial information

concerning Miller, a Utah resident, to credit reporting entities or other persons outside of the

-12-

State of Utah does not strongly suggest that S&ST has purposefully availed itself of the benefits of Utah law.  Nonetheless, the tortious disclosure of personal financial information—or the reporting of false, misleading or inaccurate information—concerning a Utah resident may be of such moment that it may be said that S&ST has purposefully availed itself of the benefits of Utah law by causing tortious injury to a Utah resident who enjoys the protection of that law.

Assuming that S&ST's conduct causing tortious injury to Miller in Utah suffices to show the requisite minimum contacts for the exercise of specific personal jurisdiction over claims arising from that injury, Due Process requires the court to consider whether the exercise of such jurisdiction comports with "traditional notions of fair play and substantial justice."

In analyzing whether this court's exercise of specific personal jurisdiction offends "traditional notions of fair play and substantial justice," *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. at 113,  we examine whether the "exercise of personal jurisdiction over a defendant with minimum contacts is reasonable in light of the circumstances surrounding the case." *OMI*, 149 F.3d at 1091 (quotations omitted).  In doing so, the court considers:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

*Id.* at 1095; *accord TH Agriculture & Nutrition, LLC v. Ace European Group Ltd.*, 488 F.3d 1282, 1292 (10th Cir. 2007).  The analyses of minimum contacts and reasonableness are complementary, such that

> "the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally

> true: an especially strong showing of reasonableness may serve to fortify a
> borderline showing of [minimum contacts]."

*Id.* at 1092 (quoting *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994)

(alterations in original).  Thus, "'depending on the strength of the defendant's contacts with the

forum state, the reasonableness component of the constitutional test may have a greater or lesser

effect on the outcome of the due process inquiry.'"  *Id.* at 1091-92 (quoting *Metropolitan Life*, 84

F.3d at 568); *see Pro Axess, Inc.*, 428 F.3d at 1279-80.

"'[T]he burden on the defendant of litigating the case in a foreign forum is of primary

concern in determining the reasonableness of personal jurisdiction.'" *Pro Axess, Inc.*, 428 F.3d at

1280 (quoting *OMI*, 149 F.3d at 1096).  S&ST has argued at length that it lacks the requisite

minimum contacts to support either general or specific personal jurisdiction in this forum, but it

gives little attention in its briefing and argument to the question of the burden of litigating this

case in this District.

The court of appeals acknowledges that "States have an important interest in providing a

forum in which their residents can seek redress for injuries caused by out-of-state actors." *Pro

Axess, Inc.*, 428 F.3d at 1280 (quoting *OMI*, 149 F.3d at 1096).  In this case, the Amended

Complaint alleges that plaintiff Miller is a citizen and resident of the State of Utah, and suffered

injury where he resides.  The State of Utah thus has an interest in providing a forum for Miller's

claim against S&ST for the injuries that Miller allegedly suffered in Utah as a result of S&ST's

conduct, and by extension, so does this court.

The court next considers whether the plaintiff may receive convenient and effective relief

in another forum. "This factor may weigh heavily in cases where a Plaintiff's chances of recovery

-14-

will be greatly diminished by forcing him to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit." *Id.* at 1281.  Like S&ST, Miller has argued at length concerning S&ST's minimum contacts with the State of Utah, but says very little about whether he would be unduly burdened or prejudiced if he was required to litigate his claim against S&ST in another forum.  It seems reasonable to assume that it would be significantly more expensive and less convenient for Miller to pursue his claims in a federal district court elsewhere, but Miller has not submitted anything indicating that the burden of doing so "may be so overwhelming as to practically foreclose pursuit of the lawsuit."

Next, the court asks "whether the forum state is the most efficient place to litigate the dispute." *Id.*  "'Key to this inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation.'"  *Id.*  (quoting *OMI*, 149 F.3d at 1097 (citations omitted)).  From the materials now before this court, it appears that plaintiff Miller is the only party or witness currently located in this District.  Everyone else is to be found someplace else.  Defendant Robertson resides in California.  Most of the corporate defendants are organized in Delaware and have principal places of business located outside of the State of Utah.  Miller claims to have suffered injury in Utah caused by wrongful disclosures made by persons outside of the State, but his claims are pleaded under federal law that would govern in any federal district court.

The fifth factor of the reasonableness inquiry "'focuses on whether the exercise of personal jurisdiction by [the forum] affects the substantive social policy interests of other states

or foreign nations.'" *Id.* (quoting *OMI*, 149 F.3d at 1097).  No one has suggested that the litigation of Miller's claim in this forum implicates the substantive social policy interests of any other appropriate forum State.  Miller's pleaded claims, such as they are, find root in *federal* law, which should be uniformly applied throughout the nation.  No foreign nation or foreign law is affected by this controversy.

Absent a substantive showing by S&ST that litigating Miller's federal claims in this District would be unduly burdensome, oppressive and prejudicial to its interests or its ability to defend the action, this court is persuaded that the balance of these five factors tips in favor of a determination that the exercise of specific personal jurisdiction over S&ST as to Miller's claims concerning the wrongful disclosure of personal and financial information would not offend traditional notions of fair play and substantial justice.

Provisionally, at least, this court concludes that defendant S&ST's motion to dismiss Miller's Amended Complaint for lack of personal jurisdiction should be DENIED.

**S&ST's Motion to Dismiss Robertson's Cross-Claim**

S&ST's motion to dismiss defendant Jack Robertson's cross-claim echoes its arguments in favor of dismissing Miller's Amended Complaint, *viz.*, that Robertson cannot show sufficient minimum contacts between S&ST and the State of Utah to support this court's exercise of either general or specific *in personam* jurisdiction over S&ST in this proceeding.  (*See* Memorandum in Support of Motion to Dismiss Jack Robertson's Cross Claim for Lack of Personal Jurisdiction, filed December 8, 2006 (dkt. no. 48), at 6-10.)

Defendant Robertson's response to S&ST's motion to dismiss Robertson's cross-claim mirrors many of Miller's assertions concerning S&ST's "continuous and systematic" business

-16-

contacts with the State of Utah.  (*See* Response to Cross Defendant System & Service

Technologies' Motion to Dismiss Jack Robertson's Cross Claim for Lack of Personal

Jurisdiction, filed January 5, 2007 (dkt. no. 52), at 2-6.)  Robertson further asserts that S&ST is a

party needed for just adjudication of claims between all of the parties within the meaning of Fed.

R. Civ. P. 19(a).  (*Id.* at 7.)

Robertson is not a Utah resident and does not allege that S&ST has transacted business

with him in Utah or caused him any injury in Utah.  His Cross-Claim against S&ST and other

defendants alleges tort claims for fraud, negligent misrepresentation and unjust enrichment

arising from the defendants' conduct with reference to Robertson's purported purchase of

Miller's mobile home, apart from the wrongful disclosure of personal financial information and

resulting injury alleged by Miller in his Amended Complaint as arising from the same purchase

and sale transaction.  Standing alone, Robertson's claim agisnt S&ST likely would be vulnerable

to dismissal under Fed. R. Civ. P. 12(b)(2).

But a cross-claim does not need an independent basis for jurisdiction as long as it satisfies

test for ancillary jurisdiction—which requires that cross-claims arise out of transaction or

occurrence that is subject matter of original action, since judicial economy, convenience, and

fairness to litigants provides a satisfactory basis for the exercise of jurisdiction over such a non-

federal claim.  *See Cam-Ful Industries v Fidelity & Deposit Co.*, 922 F.2d 156 (2d Cir. 1991).

S&ST is already a party, as is Robertson.  It follows that if this court has subject-matter and

specific personal jurisdiction over S&ST for the purpose of Miller's claims against S&ST, it

would likewise have ancillary supplemental jurisdiction over Robertson's state law tort claims

against co-defendant S&ST arising out of the same purchase and sale transaction.

At this stage of the proceeding, S&ST's motion to dismiss Robertson's cross-claim must therefore be DENIED.

For the foregoing reasons,

**IT IS ORDERED** that defendant Systems & Service Technologies, Inc.'s motion to dismiss the Amended Complaint for lack of personal jurisdiction (dkt. no. 34) is DENIED; and

**IT IS FURTHER ORDERED** that defendant Systems & Service Technologies, Inc.'s motion to dismiss defendant Robertson's Cross-Claim for lack of personal jurisdiction (dkt. no. 47), is DENIED.

DATED this ___ day of January, 2008.

BY THE COURT:

_____
BRUCE S. JENKINS
United States Senior District Judge

At this stage of the proceeding, S&ST's motion to dismiss Robertson's cross-claim must therefore be DENIED.

For the foregoing reasons,

**IT IS ORDERED** that defendant Systems & Service Technologies, Inc.'s motion to dismiss the Amended Complaint for lack of personal jurisdiction (dkt. no. 34) is DENIED; and

**IT IS FURTHER ORDERED** that defendant Systems & Service Technologies, Inc.'s motion to dismiss defendant Robertson's Cross-Claim for lack of personal jurisdiction (dkt. no. 47), is DENIED.

DATED this __28__ day of January, 2008.

BY THE COURT:

BRUCE S. JENKINS
United States Senior District Judge

-18-